# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

IN THE MATTER OF:

JAMES M. HORN                           Case No:  14-48728-MAR
                                        Chapter 7
                                        Hon. Mark A. Randon
                    Debtor,
_____/
DALE B. FULLER and ROBERT L. LEVI

        Plaintiffs,

vs.                                     Adv. Pro. No. _____


JAMES M. HORN

        Defendant.
_____/

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF INDEBTEDNESS AND SET ASIDE THE AUTOMATIC STAY

Plaintiffs for their complaint state:

### PARTIES AND JURISDICTION

1.      This is a complaint to determine the dischargeability of certain indebtedness owed

to Plaintiffs by Defendant. This complaint is filed pursuant to Rule 7001(6) of the Rules of

Bankruptcy Procedure.

2.      This court has jurisdiction in this adversary proceeding pursuant to 28 USC 157

and 1334 since this proceeding arises in the above-captioned Chapter 7 case currently pending in

this federal judicial district. This adversary proceeding is a core proceeding under 28 USC

157(b)(2)(I). Plaintiff consents to the entry of final orders and judgments by the Bankruptcy

Court.

3.      Plaintiff Dale B. Fuller is an individual residing in Oakland County in the State of Michigan at 5339 Sunnycrest Drive, West Bloomfield, MI 48323.  Plaintiff Robert Levi is an individual residing in Oakland County in the State of Michigan at 6675 West Bloomfield, MI 48324.

4.      Defendant is an individual residing at 2850 Woodbine, Waterford, MI 48328.

5.      On May 20, 2014, the Defendant commenced this bankruptcy case by filing a petition with this court under Chapter 7 of the Bankruptcy Code.

## COMMON ALLEGATIONS

### *Prior Easements of Record*

6.      On October 19, 1988 , Wendell Klestinec was the owner of two adjacent lakefront lots and an island in Waterford, Michigan:

> Lot 131, Donelson Park No. 1, Waterford Township, Oakland County, Michigan, as recorded in Liber 43, Pages 46 through 49, Oakland County Records.

> Lot 130, Donelson Park No. 1, Waterford Township, Oakland County, Michigan, as recorded in Liber 43, Pages 46 through 49, Oakland County Records.

> Part of the West ½ of the Southwest ¼ of Section 25, Town 3 North, Range 9 East, lying Southwesterly of Donelson Park No. 1, Waterford Township, Oakland County, Michigan, as recorded in Liber 43, Pages 46 through 49, Oakland County Records, Parcel No. 13-25-351-001, known as the "Island."

Land access to the Island traverses both lakefront lots.  The Island is connected to Lot 130 by a small bridge.

7.      On November 1, 1991, Wendell Klestinec, as owner of Lot 131, granted to himself, as owner of Lot 130 and as owner of the island, and to his heirs, successors, and assigns, a "perpetual, non-exclusive easement across Lot 131" for access to the Island.  On November 12, 1991, Klestinec recorded this easement with the Oakland County Register of Deeds at Liber 12174, Page 705. Permanent Easement, attached as Ex. 1.

2

8.      On November 15, 1991, in connection with his sale of Lot 131 to Simon Paul Sherry, Wendell Klestinec granted to Sherry and his heirs, successors, and assigns, "an irrevocable, permanent, non-exclusive easement" across Lot 130 to access the Island and for use of a portion of the Island.  Permanent Easement, attached as Ex. 2.  [The easement crosses both Lot 130 and Lot 131 in its transit to the Island.]   On November 21, 1991, Sherry recorded this easement with the Oakland County Register of Deeds at Liber 12196, Page 513

9.      By 1994, Klestinec had sold Lot 130 to Geraldine Parkinson subject to existing easements.  Klestinec still owned the Island.  He wanted to develop the Island.   But Parkinson denied the validity of the easement and blocked his access to the Island.  So, in 1994, Klestinec filed suit in *Klestinec v Parkinson, et al.,* Oakland County Circuit Court Docket No. 94-480949 CH against Parkinson and Paul and Kimberly Sherry to establish a right to an easement across Lot 131 and Lot 130.  On April 18, 1995, the Court dismissed that suit with prejudice.  On May 10, 2005, the order dismissing the suit was recorded with the Oakland County Register of Deeds, at Liber 35470, Page 288.  Order attached as Ex. 3.

10.     Klestinec died and, on November 3, 2006, Klestinec's testamentary trust sold the Island to current defendant James M. Horn ("Horn") on a land contract.

11.     In 2006, when Defendant Horn signed the land contract, he knew that the purported access easement over Lots 130 and 131 to the island was not valid and he knew that the Sherrys possessed an easement to use a part of the island.  Horn possessed that knowledge, because:

a.  He knew that Parkinson had denied the validity of the access easement, had blocked Klestinec's access to the Island, that Klestinec had filed suit in 1994 to validate the easement, and that the court had dismissed Klestinec' Complaint with prejudice;

3

b. The title policy, issued to him before closing on the land contract, listed an exception from coverage for the access easement to the island that Klestinec purported to give to himself on November 1, 1991 and an exception from coverage for the Sherrys' easement to use a part of the island.

c. After Horn obtained the land contract for the island, Geraldine Parkinson (then Geraldine Mitchell) and the Sherrys blocked his access to the island over their property.

12. On May 19, 2008, in *Horn v Mitchell, et al*., Oakland County Circuit Court Docket No. 2008-091657 CH, Horn filed a lawsuit against Simon and Kimberly Sherry, owners of Lot 131, and against Geraldine Mitchell (formerly Geraldine Parkinson), owner of lot 130, to establish the validity of the easement claimed by Horn (and previously claimed by Klestinec) across Sherrys' and Mitchell's property to the Island. Also, Horn sought to enjoin the defendants from interfering with Horn's access to the Island. On August 5, 2008, the Sherrys filed a an answer to Horn's complaint arguing, in part, that the dismissal with prejudice in *Klestinec v Parkinson* made the issue of the validity of the easement res judicata.

13. In Horn's Complaint, he acknowledged that the purported easement to the island was legally defective. He stated: "Plaintiff alleges that such easements and reservations of easements at a minimum indicate s*ome sort of attempt to effectuate the intended result* of allowing the original owner of the island and lots 130 and 131 to have access across lots 130 and 131. (Emphasis added.) Complaint, ¶ 58.

14. Since the Estate of Wendell Klestinec, deceased, still held title to the Island, on August 8, 2008, defendants Simon and Kimberly Sherry moved to add the Estate of Klestinec as a necessary party to the lawsuit brought by Horn. The parties stipulated that the Estate of Klestinec would be added as a necessary party unless, by September 30, 2008, Horn recorded a

warranty deed granting fee simple ownership of the Island to Horn. Horn obtained the loan from present plaintiff Fuller to pay off the land contract with the Estate. Thus, Horn became the owner in fee simple of the Island and recorded the warranty deed on September 18, 2008.

15.    In an Opinion and Order in *Horn v Mitchell, et al*. dated February 19, 2009, Judge Sosnick found that Horn had bought the Island with knowledge of the 1994 lawsuit by Klestinec and its resulting dismissal with prejudice, and, that the order of dismissal from the 1994 case was recorded with the Oakland County Register of Deeds in the chain of title to the Island. The Court concluded that the prior order of dismissal in Klestinec's suit made the issue, of whether Horn held a valid easement across the Sherrys' and Mitchell's land, res judicata and that Horn had no valid easement. Opinion and Order attached as Ex. 4.

### *Fuller's Loan to Horn*

16.    Prior to September 9, 2008, James Horn approached plaintiff Dale B. Fuller about a loan of $100,000.00 to pay off the balance due on the land contract for the Island.    Horn represented to Fuller that there was land access to the island by the bridge from the mainland. Horn did not tell Fuller about Klestinec's and Horn's problems with accessing the Island, Horn's title policy from 2006 excepting the easement from coverage, his existing lawsuit in Oakland County to validate the purported easement, or the 1994 unsuccessful lawsuit by Klestinec asserted by the Sherrys as a bar to Horn's existing lawsuit.

17.    On or about August 26, 2008, Horn contracted with certified appraiser Lynne Nicoll Fuller to appraise the value of the Island for the purpose of presenting the appraisal to Dale Fuller. When Ms. Fuller viewed the property defendant Horn accompanied her. Horn told Ms. Fuller that there was an existing, valid, recorded easement over the lakefront lots 130 and 131 for ingress and egress to and from the Island. Horn did not tell the appraiser about the

problems with accessing the Island, his lawsuit in Oakland County to validate the purported

easement, his title policy from 2006 excepting the easement from coverage, the 1994

unsuccessful lawsuit by Klestinec and the order of dismissal with prejudice (asserted by the

Sherrys as a bar to Horn's then pending lawsuit), or about the Sherrys' easement to use part of

the island.

18.     When Horn made the representation to Dale Fuller and Lynne Fuller about the

validity of the access easement, he knew those representations were not true, because:

a.  He knew that Geraldine (Parkinson) Mitchell had denied the validity of the easement, had
    blocked Klestinec's access to the Island, that Klestinec had filed suit in 1994 to validate
    the easement, and that the court had dismissed Klestinec' Complaint with prejudice;

b.  He knew that the title policy, issued to him before closing on the land contract in 2006,
    listed an exception for coverage for the access easement to the island that Klestinec
    purported to give to himself on November 1, 1991;

c.  He knew that Geraldine (Parkinson) Mitchell had denied the validity of the easement and
    had blocked Horn's access to the Island;

d.  In Horn's recent Complaint, he had acknowledged that the purported easement to the
    island was legally defective.  He had stated:  "Plaintiff alleges that such easements and
    reservations of easements at a minimum indicate some sort of attempt to effectuate the
    intended result of allowing the original owner of the island and lots 130 and 131 to have
    access across lots 130 and 131.

19.     Per Horn's approval and directive, Lynne Fuller presented the appraisal to Dale

Fuller.  Based in part on Horn's representations to her, the appraiser valued the property at

$900,000.00.  In an addendum to the appraisal, the appraiser stated:

> In this appraisal assignment, I viewed the subject property from a boat in the
> water and did visually see the island and the bridge to gain access to the property
> to determine the improvements that are relevant to the valuation problem.
> ....
> I used  information from county records, owner's comments, assessor's records,
> multiple listing service and Access Oakland to identify the characteristics of the
> subject property that are relevant to the valuation problem.
> ....

Subject property is a very desirable island in an all sports lake.  The property has ingress and egress by a bridge (see photo) with a recorded deeded easement between two properties with the property ID#'s 1325352011 & 1325352012. (See attached deed)

Addendum, p. 1 (emphasis added.)

20.     On August 21, 2008, Horn obtained from Lawyers Title Insurance Corporation ("Lawyers Title") and for the plaintiff as insured a Title Commitment insuring the anticipated mortgage on the island.  Subsequently, Lawyers Title merged with Fidelity National Title Insurance Company.

21.     In the Title Commitment, the General Exceptions from coverage included the liber and page number for the access easement to the island.  But the Title Commitment misleadingly described the document as "Building and Use Restrictions", so the document did not give Dale Fuller notice that the policy omitted the access easement from coverage.   But Horn knew that the liber and page number cited was for the access easement, because it was the same liber and page number described in his title policy from 2006 as "Permanent Easement."

22.     In the Title Commitment, the General Exceptions from coverage included the liber and page number for the Sherry's easement to use part of the island.  But the Title Commitment misleadingly described the document as "Building and Use Restrictions", so the document did not give Dale Fuller notice that the policy omitted the Sherry's use easement from coverage.   But Horn knew that the liber and page number cited was for the Sherry's use easement, because it was the same liber and page number described in his title policy from 2006 as "Permanent Easement."

23.     Yet, despite Horn's knowledge that the title commitment omitted from coverage the access easement and the Sherry's use easement, on September 5, 2008, Horn notified Fuller by email that:  "Title work is clean I will have full policy by 10am Monday."   (The closing on

7

the loan was set for September 9, 2008.)  Horn intentionally misrepresented to Fuller that the title work was clean.

24.     Based upon Horn's representations to Dale Fuller (directly and via the appraiser as Horn's agent) about the validity of the easement, and based upon Horn's representation that the title work was clean, Dale Fuller agreed to loan Horn $100,000.00 to pay off the existing balance due on the land contract for the Island.

25.     On September 9, 2008, Horn executed a promissory note ("Note") in exchange for receiving the $100,000.00.  Note, attached as Ex. 5.  In the Note, Horn promised to pay $100,000.00, together with interest.  Horn agreed that interest from September 9, 2008, through September 9, 2009, would accrue at the rate of twenty-five (25.00%) per cent per annum.  He agreed that after September 9, 2009, any unpaid principal and any unpaid interest that accrued through September 9, 2009 would accrue at a variable rate equivalent to 7% per annum plus the prime rate as published in the Wall Street Journal, but not to exceed 10%.  Horn agreed to pay all principal, initial interest, secondary interest, costs, expenses, and attorney fees no later than September 9, 2010.   Later, Fuller extended the final payment date to December 8, 2010, upon Horn's payment of $3,437.50 to extend the payoff for 90 days.

26.     The Note provides that if legal action was taken to collect the Note, Fuller was entitled to collect all reasonable cost and expenses, including reasonable actual attorney's fees.

27.     In the Note, Horn acknowledged that the loan was for the purpose of allowing him to purchase the Island.  Horn represented that he was purchasing the Island for the business purpose of making an investment or development.

28.      The Note referenced a certain mortgage creating a first lien on the Island in favor of Fuller as mortgagee.  In the Note, Horn acknowledged that the mortgage was a material

8

inducement to Fuller loaning him the $100,000.00 and that, without the mortgage, Fuller would not have made the loan.

29.     On September 9, 2008, Horn executed the Mortgage against the Island as security for the loan from Fuller.  The Mortgage was recorded on September 19, 2008.  Mortgage attached as Ex. 6.

30.     In the Mortgage, Horn warranted "that except as herein stated the Property is unencumbered."   The mortgage did not state that the property was encumbered by the Sherry's use easement.  Horn knew about the Sherry's easement, because he attached the recorded easement as Exhibit B to his Complaint in Oakland County Circuit Court.   And, he knew that his title policy from 2006 had omitted that easement from coverage. Therefore, in the mortgage Horn intentionally misrepresented that the property was unencumbered.

31.     In the Mortgage, Horn promised to pay all taxes and assessments levied on the land within thirty days after the same become due and deliver official receipts to Fuller.  The Mortgage provided that if Horn breached the latter provision, Fuller could pay the taxes and any amount paid would be added to the indebtedness subject to the interest provided in the Note.

32.     Between December 15, 2009 and October 21, 2010, Horn made four payments on the Note in the total amount of $12,812.72.   After October 21, 2010 Horn made no further payments on the Note.

33.     Horn has also failed to pay county property taxes that accrued in 2010, 2011, and 2012.

34.     Before Horn and Fuller closed on the Note and the Mortgage on September 9, 2008, Horn never told Fuller about the 1994 lawsuit by Klestinec and the order of dismissal with prejudice, his 2006 title policy excepting the easements from coverage, the pending lawsuit

brought by Horn, that in that suit the owners of the lakefront lots were challenging the validity of the easement to the Island and claiming that the 1994 order of dismissal made the issue res judicata, or about the Sherrys' easement to use part of the island.

35.     Only after October 21, 2010, when Horn stopped paying on the Note, did Horn tell Fuller about his lawsuit against the owners of the lakefront lots to enforce the easement to the Island and that the Court had ruled that the easement was invalid. Even then, Horn did not tell Fuller about the 1994 lawsuit by Klestinec and the order of dismissal with prejudice, or about his 2006 title policy omitting the easements from coverage, about the title policy issued to Fuller omitting the easements (but describing them as "building and use restrictions"), or about the Sherrys' easement.

36.     After Horn's default on the Note Dale Fuller incurred legal fees and expenses first to collect the debt owed by Horn, and then, to seek foreclosure on the Island, and finally, to pursue a claim against the title insurance company.

37.     Without access to the Island, and with the Sherrys' easement to use the Island, the Island's value is less than the $900,000.00 appraised value and less than the $100,000.00 loaned to Horn. Thus, Horn's misrepresentations concerning the easement deceived Fuller into believing that the collateral he was obtaining for the loan was worth far more that it was actually worth. If Fuller had known the true status of the island, he would not have loaned Horn the money without additional security.

38.     Horn's misrepresentation to Fuller concerning the validity of the easement to the Island has caused Fuller serious mental anguish, stress, embarrassment, and humiliation.

*Fuller Obtained Judgment Against Horn for Fraud in Oakland County Circuit Court*

39.     On March 13, 2013, Dale Fuller filed a Complaint against James Horn and Fidelity National Title Insurance Company ("Fidelity National") in Oakland County Circuit Court, case No. 2013-132816 CH.  On September 3, 2013, the plaintiffs filed a Second Amended Complaint in that matter.

40.     In Count I of the Second Amended Complaint, the plaintiff alleged that James Horn had defaulted on a Promissory Note dated September 9, 2008.

41.     In Count II of that Complaint, the plaintiff alleged that defendant James Horn induced the plaintiff to loan him $100,000.00 to purchase an island in Otter Lake, Waterford, Michigan by intentionally misrepresenting that a valid land access easement to the island existed, that the title was clear, and there were no encumbrances on the property.  First Amended Complaint, ¶ 78-86, Ex. 7.   The plaintiff claimed that Horn's intentional misrepresentation caused the plaintiff serious mental anguish, stress, and embarrassment.  He sought compensatory damages and exemplary damages including attorney fees and costs.

42.     In the Complaint, Dale Fuller alleged breach of contract against Fidelity National. First Amended Complaint, ¶ 99-108.  Ultimately, Dale Fuller settled the case against Fidelity National for an amount less than the total damages he suffered as a result of James Horn's fraudulent acts.

43.     On December 11, 2013, the plaintiff filed a Motion for Default Judgment Against James M. Horn and Brief in Support of Motion.  The plaintiff sought damages for fraud and breach of contract including attorney fees and costs for litigating against Fidelity National.  Ex. 8.

44.     On December 13, 2013, the plaintiff filed a Supplement to the Motion for Default Judgment Against James M. Horn.   Ex. 9.   In that Supplement, the Plaintiff sought an evidentiary hearing to establish the amount of Horn's liability for exemplary damages for fraud.

45.     On December 20, 2013, the Oakland County Circuit Court held an evidentiary hearing to establish the amount of Horn's liability for exemplary damages for fraud.   That Court quantified the exemplary damages for fraud and rendered a judgment awarding compensatory and exemplary damages for fraud.   As part of the exemplary damages, the Court awarded to Robert Levi his attorney fees and costs almost all for litigating against Fidelity National, litigation necessitated by Horn's willful and malicious acts.[1]   T. 12/20/13, p. 4/line 14 -- p. 5/line 3.   The Court also stated, "And the judgment may contain a provision as to how any payments are to be applied."   Id., 5.

46.     On January 3, 2014, the Oakland County Circuit Court entered a Default Judgment Against Defendant James M. Horn for $250,942.51.   Ex. 10.

47.     As the Court had ordered, the Default Judgment contains a provision as to how any payments are to be applied.   The judgment states:

> IT IS FURTHER ORDERED that all payments towards satisfying this Judgment shall be applied first to costs, expenses, and attorney fees, then to Secondary Interest, then to Initial Interest, and then to Principal, as provided in the Promissory Note dated September 9, 2008 between Dale B. Fuller and James M. Horn.  The final payments towards satisfying the Judgment shall be applied towards the award for exemplary damages.

Default Judgment, p. 3.

48.     To facilitate the application of payments , the Default Judgment itemizes by a list all the components of the damages awarded.   Plaintiff's counsel, who drafted the Default Judgment, created that list as a way to implement the Court's ruling that, "[T]he judgment may

---

[1] The only attorney fees not associated with suing Fidelity were for those for preparing the Entry of Default against Horn and preparing the Motion for Default Judgment [$540.00 (1.8 hours X $300.00 per hour)].

contain a provision as to how any payments are to be applied."  The list that appears in the

Default Judgment is as follows:

| | |
|---|---|
| 1.  Principal ($101,995.14, including taxes paid by Fuller) plus Initial Interest Due on the Promissory Note ($25,000.00) and Secondary Interest Due on the Promissory Note ($45,777.27) through entry of Judgment. | $172,772.41 |
| 2.  Attorney Fees and Cost of Lawrence Tower (for foreclosure proceedings and initial claim against title company). | $3725.00 |
| 3.  Attorney Fees and Costs of Robert Levi | $49,445.10 |
| 4.  Exemplary Damages for fraud | $25,000.00 |
| TOTAL | $250,942.51 |

49.     The record established that all of the above damages, except for a small portion of

Robert Levi's fees ($540.00) that were associated with suing Horn himself, were awarded on

account of Horn's liability for fraud.  T. 12/20/13, 4-5.

50.     Giving Horn a deduction for the settlement funds paid by Fidelity National, the

amount of the Default Judgment still owing to the current plaintiffs is $200,942.51, less amounts

paid by Horn through wage garnishments, plus accrued interest, costs, and attorney fees

## COUNT I
## FALSE REPRESENTATIONS, ACTUAL FRAUD, AND MISREPRESENTATION
## UNDER 11USC 523(a)(2)(A)

51.     The plaintiff incorporates paragraphs 1 to 50 above by reference.

52.     Defendant Horn, through his comments to the appraiser and directly to the

plaintiff, made a material misrepresentation that (1) there was an existing, valid, recorded

13

easement over the lakefront lots 130 and 131 for ingress and egress to and from the Island, (2) that the title work to the Island was "clean," and, (3) that "the Property is unencumbered."

53.     Horn's representations were false.

54.     When Horn made the representations he knew they were false, or made them recklessly, without any knowledge of their truth and as a positive assertion.

55.     Horn made the representations with the intention that the plaintiff should act upon them by loaning Horn money.  Horn obtained money, as well as credit extensions, from plaintiff by false pretenses, false representations, and actual fraud.

56.     The plaintiff did act in reliance upon Horn's representations by loaning Horn $100,000.00.  Plaintiff relied on those representations in determining whether to extend credit to Horn on September 9, 2008.

57.     Because of those misrepresentations and pretenses and actual fraud by defendant, plaintiff has suffered financial losses. The plaintiff suffered financial losses as a result of relying on Horn's representations.

58.     Horn's intentional misrepresentations to Fuller have caused Fuller serious mental anguish, stress, embarrassment, and humiliation.  The plaintiff has suffered exemplary damages.

59.     Through the doctrine of collateral estoppel, the record from the *Fuller v Horn* in Oakland County Circuit Court establishes that Horn's debt to Fuller is for money or an extension, renewal, or refinancing of credit obtained, by false pretenses, a false representation, or actual fraud.  Thus, the debt is nondischargeable under 11USC 523(a)(2)(A).

60.     The Oakland County Circuit Court awarded attorney fees to plaintiff Robert L. Levi almost entirely as an element of exemplary damages on account of the defendant's fraud which caused Fuller to have to sue a third party, Fidelity National.  T. 12/20/13, 4.  Through the

14

doctrine of collateral estoppel, the record from the *Fuller v Horn* in Oakland County Circuit Court establishes that Horn's debt to Robert L. Levi is almost entirely part of Horn's debt to Fuller for money or an extension, renewal, or refinancing of credit obtained, by false pretenses, a false representation, or actual fraud. Thus, the debt is nondischargeable under 11USC 523(a)(2)(A).

## COUNT II
## WILLFUL AND MALICIOUS INJURY BY THE DEBTOR
## UNDER 11USC 523(a)(6)

61. The plaintiff incorporates paragraphs 1 to 60 above by reference.

62. Defendant Horn, through his comments to the appraiser and directly to the plaintiff, made a material misrepresentation that (1) there was an existing, valid, recorded easement over the lakefront lots 130 and 131 for ingress and egress to and from the Island, (2) that the title work to the Island was "clean," and, (3) that "the Property is unencumbered."

63. Horn's representations were false.

64. When Horn made the representations he knew they were false.

65. Horn made the representations with the intention that the plaintiff should act upon them by loaning Horn money. Horn obtained money, as well as credit extensions, from plaintiff by false pretenses, false representations, and actual fraud, and willful and malicious injury.

66. Horn believed that the consequences of his action were substantially certain to result from it. He intentionally misrepresented that the access easement was valid, that the title policy was clean, and that the island was not encumbered in order to induce Dale Fuller to loan Horn money. On August 5, 2008, before Horn made the misrepresentations, Horn received the Sherrys' Answer to his Complaint. In the affirmative defenses, the Sherrys stated that, under the

15

doctrine of res judicata, Horn's suit was barred by the prior dismissal with prejudice of Klestinec's suit. At that point, Horn knew that his lawsuit would fail.[2] Horn fraudulently induced Fuller to loan him the $100,000.00 knowing that he did not have the funds to repay the loan and that, if Fuller foreclosed on the mortgage, the value of the island without the access easement and the Sherrys' use easement would not be sufficient to satisfy the loan. Horn believed that financial loss to Fuller was substantially certain to result from Horn's misrepresentations and withholding of information about the status of the easements. Therefore, Horn's debt to Fuller arose from Horn's willfullness.

67.     In misrepresenting the validity of the access easement and that the island was unencumbered, and in failing to tell Fuller about his ongoing lawsuit, Horn acted in conscious disregard of his duties as established by the mortgage in which he warranted "that except as herein stated the Property is unencumbered ... and that Mortgagor will warrant and defend generally the title to the Property against all claims and demands."   Also, Horn is a real estate agent. He acted in conscious disregard of his ethical and legal duties as a real estate agent. Horn also acted without just cause or excuse. Therefore, Horn's debt to Fuller arose from Horn's maliciousness.

68.     Horn's actions were willful and malicious rather than unwitting or innocent.

69.     Through the willful and malicious injury by defendant, plaintiff has suffered financial losses.

70.     Horn's willful and malicious injury has caused Dale Fuller serious mental anguish, stress, embarrassment, and humiliation. The plaintiff  Dale Fuller has suffered exemplary damages, including attorney fees for having to sue Fidelity National.

---

[2] Judge Sosnick ultimately did dismiss Horn's complaint on that basis.

16

71.    Through the doctrine of collateral estoppel, the record from the *Fuller v Horn* in Oakland County Circuit Court establishes that Horn's debt to Fuller was a willful and malicious injury by Horn.  In awarding exemplary damages, the circuit judge found Horn's behavior both willful and malicious.  Thus, the debt is nondischargeable under 11USC 523(a)(6).

72.    The Oakland County Circuit Court awarded attorney fees to plaintiff Robert L. Levi.  Through the doctrine of collateral estoppel, the record from the *Fuller v Horn* in Oakland County Circuit Court establishes that all of Horn's debt to Levi was part of the willful and malicious injury inflicted by Horn on Fuller.  Thus, the debt is nondischargeable under 11USC 523(a)(6).

**<u>RELIEF REQUESTED:</u>**

Plaintiffs request this court:

1. to declare that Plaintiffs' joint allowed claims of $ $200,942.51 less amounts paid from wage garnishments against the defendant, plus accrued interest, costs, and attorney fees be deemed nondischargeable;
2. to set aside the automatic stay and permit the plaintiffs to pursue collection and other actions in the Oakland County Circuit Court, and
3. to grant any other relief that the court deems just and proper.

Respectfully submitted,

By /s/ Robert L. Levi
Robert L. Levi
In Pro Per and Attorney for Dale B. Fuller
Robert L. Levi, P.C.
6675 Edwood Ave.
West Bloomfield, MI 48324
robert@robertlevilaw.com
248-366-4412
State of Michigan Bar No. 42598

Date: August 21, 2014

# EXHIBIT 1

## PERMANENT EASEMENT

WHEREAS, WENDELL KLESTINEC, a single man, 2890 Chadwick Drive, Waterford, Michigan 48328, is the owner of Lot 131, Donelson Park No. 1, Waterford Township, Oakland County, Michigan, as recorded in Liber 43, Pages 46 through 49, Oakland County Records, and

WHEREAS, WENDELL KLESTINEC, is also the owner of Lot 130 in said subdivision, which lot adjoins Lot 131, and

> B#92 REG/DEEDS PAID
> 0001 NOV.13'91 01:46PM
> 2171 MISC     11.00

WHEREAS, WENDELL KLESTINEC, is also the owner of that part of the West 1/2 of the Southwest 1/4 of Section 25, Town 3 North, Range 9 East, lying Southwesterly of Donelson Park No. 1, Waterford Township, Oakland County, Michigan, as recorded in Liber 43, Pages 46 through 49, Oakland County Records, known as the "Island", and

WHEREAS, WENDELL KLESTINEC, desires to create a non-exclusive easement across a portion of Lot 131 for the use and benefit of the owner of Lot 130 and the land to the South and West, known as the "Island".

THEREFORE, WENDELL KLESTINEC, does in his capacity as the owner of Lot 131, Donelson Park No. 1, hereby grant unto himself in his capacity as the owner of Lot 130, Donelson Park No. 1, and of the "Island", as well as to his heirs, successors, and assigns, a perpetual non-exclusive easement across Lot 131, Donelson Park No. 1, Waterford Township, Oakland County, Michigan.    43046

> B#92 REG/DEEDS PAID
> 0001 NOV.13'91 01:46PM
> 2171 RMT FEE     2.00

The easement is across the following described portion of Lot 131:

That part of Lot 131, beginning at a point on the Southeasterly line of said Lot 131, which is the common line between Lots 131 and 130, located S38°16'W 32.80 feet from the Northwest corner of said Lot 130; thence S55°54'04"W 107.80 feet; thence S28°15'20"E 35.60 feet; thence N38°16'E 116.93 feet to the point of beginning. (Survey attached)   Pt of 13-25-352-011

The foregoing easement description does overlay an existing easement for ingress, egress, and utilities, and is not meant to extinguish, enlarge, or in any way affect such existing easement.

The easement described in this document may be used by the owner of Lot 130 of Donelson Park Subdivision No 1 and the Island previously described, for ingress and egress, the placement of utilities, road surfaces to the island, boat dockage, and all legal purposes, subject to the applicable laws, statutes, ordinances, and regulations, as promulgated.

11.00
2.00 RMT
Pt

Page 1 of 3

O.K. - TB

13.00

NOV 12 1991

LIBER 12174 PAGE 706

No permanent or temporary structure shall be maintained on the easement area, with the exception of that required for ingress and egress, bridge or road widening and utility purposes to the Island, nor shall rightful access be denied to the owners of Lot 130, 131, and the Island. The area shall be maintained in a safe and clean condition at all times. The users of the easement area agree to indemnify and pay for the defense of any liability that may accrue to the owner of Lot 131, as a result of the usage of the area.

The owner of Lot 130 and of the Island may, at such owner's sole and absolute discretion, assign this easement to a part of Lot 130, or to the Island to the exclusion of any part of Lot 130 or the Island, as such owner my desire.

This easement shall be binding on the heirs, successors, and assigns of WENDELL KLESTINEC as to both Lots 130 and 131, and the Island. Tax Item Nos. (13-25-352-012,) (13-25-352-011) (13-25-351-001) respectively.

WITNESSES:

_Patricia Goulait_
Patricia Goulait

_Albert F. Pauly_
Albert F. Pauly

_Wendell Klestinec_
WENDELL KLESTINEC

STATE OF MICHIGAN)
           )ss
COUNTY OF OAKLAND)

Subscribed and sworn to before me
this _1st_ day of _November_, 1991. By Wendell Klestinec , a single man

_Albert F. Pauly_
Notary Public  Albert F. Pauly
Oakland County, Michigan

My Commission Expires: _2-22-94_

Drafted By:
Richard A. Campbell
20 W. Washington St., Suite 1
Clarkston, MI 48346

Return to A.F. Pauly,III
    3080 Dixie Highway
    Waterford, MI 48329

Page 2 of 3

CANAL AREA

PART OF LOT 132

LOT 131
10,940.0 SQ. FT.

LOT 130

2880

2890

CHADWICK DR.

| Subdivision | "DONELSON PARK No. 1" | |
|---|---|---|
| Client | WENDELL KLESTINEC | |
| Lot | | Sec. 25/24 T. 3N R. 9E |
| Date | 3-20-91 | WATERFORD Twp. |
| Scale | 1"=30' Job No. 91-12 | OAKLAND Co. |
| | | Michigan |

R. J. McCOY

RAYMOND J McCOY
LAND SURVEYOR

The error of closure is no greater than 1 in 5000, which is within the accuracy of survey as required in Act No. 288 of Public Acts of 1967.

This survey complies with the requirements of Sec. 3, Public Act 132 of 1970.

Legend
"o" Iron set or found

Raymond McCoy
Registered Land Surveyor

R. J. McCOY CO.
Surveying - Land Planning

209 Florence Ave.
Pontiac, Mich. 48053

Ph. (313) 332-2210

Page 3 of 3

CERTIFICATE OF COPY OF RECORD
STATE OF MICHIGAN
COUNTY OF OAKLAND

I, Ruth Johnson, Register of Deeds for Oakland County,
certify that I have compared the attached copy with the original
record on file, and it is a true and correct transcript of the
original record in Liber 12174 Page(s) 105 - 107
in testimony whereof, I have set my hand and affixed the seal of
REGISTER OF DEEDS on this 6th day of June 2007
By:

DEPUTY   Carolyne A. Barnhart

# EXHIBIT 2

7 M   198355

# LIBER 12196 PAGE 513
## PERMANENT EASEMENT

Agreement made on November 15, 1991, between SIMON PAUL SHERRY, a single man, of 1838 Casa Lake Front, Keego Harbor, Michigan 48320 ("Grantee") and WENDELL KLESTINEC, a single man, 2800 Chadwick Drive, ("Grantor").

**WITNESSETH:**

WHEREAS, Grantor owns in fee simple Lot 130, Donelson Park No. 1, Waterford Township, Oakland County, Michigan, as recorded in Liber 43, Pages 46 through 49, Oakland County Records (Tax Item No. 13-25-352-012), and

WHEREAS, Grantor owns in fee simple that part of the West 1/2 of the Southwest 1/4 of Section 25, Town 3 North, Range 9 East, lying Southwesterly of Donelson Park No. 1, Waterford Township, Oakland County, Michigan, as recorded in Liber 43, Pages 46 through 49, Oakland County Records, known as the "Island", (Tax Item No. 13-25-351-001), and

WHEREAS, Grantee is the fee simple owner of the land adjacent to the "Island" and Lot 130, legally described as Lot 131 and the South 15 feet of Lot 132, Donelson Park No. 1, Waterford Township, Oakland County, Michigan, as recorded in Liber 43, Pages 46 through 49, Oakland County Records, (Tax Item No. 13-25-352-011), and

WHEREAS, Grantor wishes to grant Grantee the right to use a portion of the "Island" and Lot 130, as more particularly detailed in this agreement.

NOW THEREFORE, in consideration of the sum of One dollar ($1.00) and other good and valuable consideration paid by Grantee to Grantor, the receipt and adequacy of which is hereby acknowledged, the parties agree as follows:

1. Grantor, as the fee simple owner of the above described property hereby grants to Grantee, his heirs, successors, and assigns, an irrevocable, permanent, non-exclusive easement to the following described property:

LOT 130: Beginning at the North Corner of Lot 130; thence S38°16'W 149.73 feet; thence S30°15'E 10.0 feet; thence S88°53'E 0.87 feet; thence N38°16'E 154.75 feet; thence along a curve to the right (R=50.0 feet, Long Chord Bears N62°22'34"W 10.18 feet) a distance 10.19 feet to the point of beginning (Survey attached)

THE ISLAND: Beginning at point located distant N38°16'W 149.73 feet from the North corner of Lot 130; thence S38°16'W 125 feet; thence S12°30'E 47 feet more or less; thence Easterly along Breakwall of Otter Lake 50 feet more or less; thence Northerly along Breakwall of Otter Lake 103 feet more or less; thence N38°16'E 41 feet; thence N88°53'W 0.87 feet; thence N30°15'W 10.0 feet to the point of beginning. (Survey attached)

Page 1 of 3

NOV 21 1991

LIBER 12196 PAGE 514

2. Grantee may use the easement area for pleasure, boating activities, dockage, ingress, egress, and ancillary uses not inconsistent with the foregoing. Grantee, and all those claiming under him shall be prohibited from constructing any permanent improvements in the easement area and agree to restrict all activities to those not in violation of any law, statute, ordinance, regulation, or restriction in effect now or as promulgated in the future.

3. The parties agree to mutually indemnify, hold harmless, and pay the costs to defend the other from any and all liability that may accrue from activities initiated by them, their invitees, guests, and persons rightfully using the area through their authority.

4. It is the intention of the signatory parties that this easement shall run with Lot 131 and the S 15 feet of Lot 132 of Donalson's Park Subdivision No. 1, and shall be binding upon all parties hereafter claiming through them.

IN WITNESS WHEREOF, the parties herein affix their signatures on the day and month first written above.

WITNESSES:                              GRANTOR:

_Catherine Campbell_                    _Wendell Klestinec_
Catherine Campbell                      WENDELL KLESTINEC,
                                        A Single Man

_Albert F. Pauly_                       _Simon Paul Sherry_
Albert F. Pauly                         SIMON PAUL SHERRY,
                                        A Single Man


STATE OF MICHIGAN)
                 )ss
COUNTY OF OAKLAND)

On this 15th day of November, 1991, before me appeared known to be the persons described and who executed the foregoing instrument as their own free acts and deeds. *Wendell Klestinec, a single man and Simon Paul Sherry, a single man.

_Nancy A. Dixon_
Notary Public  Nancy A. Dixon
Oakland County, Michigan

My Commission Expires: June 9, 1992

Drafted By:                    Return to: Seaver Title Company
GARY L. WALKER, Esq.                     6751 Dixie Highway
2525 Telegraph Rd.                       Clarkston MI 48346
Bloomfield Hills, Michigan, 48302
                               Attn: KW  10R975

Page 2 of 3



# EXHIBIT 3



RECEIVED
MAY 10 2005
Ruth Johnson Register of Deeds
Oakland County, MI

LIBER **35470** PG **288**

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

WENDELL KLESTINEC and WENDELL
KLESTINEC as Trustee of the
Wendell Klestinec Trust, dated
July 10, 1994,

      Plaintiffs/Counter-Defendants,

vs.

GERALDINE PARKINSON and SIMON
PAUL SHERRY and KIMBERLY D.
SHERRY, husband and wife,

      Defendants/Counter-Plaintiffs.

94-480949-CH

JUDGE FRANCIS X. O'BRIEN
KLESTINEC.WEN V PARKINSON.GER

RECEIVED FOR FILING
OAKLAND CO. CLERK
2005 APR 18 A 9:00
DEPT.

ENTERED
LR

131554
LIBER 35470 PAGE 288
$19.00 MISC RECORDING
$4.00 REMONUMENTATION
05/10/2005 09:01:37 A.M. RECEIPT# 50350

PAID    RECORDED - OAKLAND COUNTY
RUTH JOHNSON, CLERK/REGISTER OF DEEDS

RODNICK, UNGER & KANER, P.C.
BY: JOHN E. LEWIS (P47362)
Attorneys for Plaintiffs
3280 E. Thirteen Mile Road
Warren, MI 48092-1333
(810) 574-0020

A. G. EDWARDS AND ASSOCIATES, P.C.
BY: ALAN G. EDWARDS (P35408)
Attorneys for Defendant PARKINSON
30800 Telegraph Road, Suite 2980
Bingham Farms, MI 48025
(810) 642-4200

SIMON PAUL SHERRY and
KIMBERLY D. SHERRY
c/o GARY L. WALKER (P23726)
4298 Meadowlane
Bloomfield Hills, MI 48304
(810) 335-8950

4P
P

_____/

<u>ORDER OF DISMISSAL OF PLAINTIFFS' COMPLAINT,
WITH PREJUDICE, AND ENTRY OF DEFAULT AGAINST
COUNTER-DEFENDANT ON COUNTER-COMPLAINT</u>

At a session of said Court, held in the
City of Pontiac, County of Oakland, State
of Michigan, on _____

**O.K. - AW**

PRESENT: HON. _____
             CIRCUIT COURT JUDGE

    WHEREAS, the Defendant/Counter-Plaintiff, GERALDINE MITCHELL-

PARKINSON, brought forth her Motion to Dismiss, based upon failure of

A G EDWARDS AND
ASSOCIATES, P C
30800 Telegraph Road
Suite 2980
Bingham Farms, MI 48025
(313) 642 8100

LIBER 35470 PG289

Plaintiffs/Counter-Defendants, WENDELL KLESTINEC and WENDELL KLESTINEC as Trustee of the Wendell Klestinec Trust, dated July 10, 1994, premised upon Plaintiffs/Counter-Defendants' failure to comply with this Court's Order Regarding Discovery, the Court having heard the arguments of counsel as set forth on the record, and the Court being fully advised in the premises;

IT IS HEREBY ORDERED AND ADJUDGED that the Plaintiffs/Counter-Defendants', WENDELL KLESTINEC, individually, and WENDELL KLESTINEC as Trustee of the Wendell Klestinec Trust, dated July 10, 1994, Complaint and First Amended Complaint are hereby dismissed, with prejudice, pursuant to MCR 2.504(B);

IT IS FURTHER ORDERED AND ADJUDGED that WENDELL KLESTINEC, individually, and WENDELL KLESTINEC as Trustee of the Wendell Klestinec Trust, dated July 10, 1994, as Defendants in the Counter-Claim filed by Defendant/Counter-Plaintiff, GERALDINE MITCHELL-PARKINSON, is hereby found in default, for all purposes as set forth in the Court Rules.

_____

CIRCUIT COURT JUDGE



7 DAY RULE ORDERED

4/7/95

4/17/95

STATE OF MICHIGAN } ss.
COUNTY OF OAKLAND
I RUTH JOHNSON, County Clerk for the County of Oakland, Clerk of the Circuit Court thereof, the same being a Court of Record and having a Seal, hereby certify that the attached is a true copy.
In Testimony whereof, I have hereunto set my hand and placed the seal of said Court this APR 22 2005
RUTH JOHNSON Clerk  Register of Deeds
_____ Deputy Clerk

A. G. EDWARDS AND
ASSOCIATES, P. C
30800 Telegraph Road
Suite 2880
Bingham Farms, MI 48025
(313) 642-6100

LIBER 35470 PG290

April 7, 2005

**Notice of Lis Pendens dated 07/29/1994**

Attached is the: **ORDER OF DISMISSAL OF PLAINTIFFS' COMPLAINT WITH PREDUDICE, AND ENTRY OF DEFAULT AGAINST COUNTER-DEFENDANT ON COUNTER-COMPLAINT**

**Oakland County Circuit Court: File Number 94-480949-CH, between Wendell Klestinec, plaintiff, and Geraldine Parkinson, defendant as disclosed by Notice of Lis Pendens dated 07/29/1994 and recorded 08/01/1994 in Liber 14920, Page 234, Oakland County Records.**

LIBER 35470 PG 291

```
CRD490                  TOWNSHIP OF WATERFORD              05/10/0
                        LAND FILE DISPLAY SCREEN           08:59:5
CVT CODE:    W
SIDWELL NO: 13 25 352 012        PROPERTY DESCRIPTION:
                                 01 T3N, R9E, SEC 25
                                 02 DONELSON PARK NO 1
OWNER(S)                         03 LOT 130
     GERALDINE MITCHELL


PROPERTY ADDRESS
     2890 CHADWICK
     WATERFORD        MI 48328-3606                43076

MAILING ADDRESS
```

43076

```
LAND RECORD DISPLAYED AS REQUESTED
```

*Return To: Geraldine Mitchell*
*2890 Chadwick*
*Waterford Mi 48328*

# EXHIBIT 4



STATE OF MICHIGAN

IN THE OAKLAND COUNTY CIRCUIT COURT

James Horn,

     Plaintiff and Counter-Defendant,

v

                                      Case No. 2008 091657 CH
                                      Hon. Edward Sosnick

Simon Paul Sherry, and Kimberly D.
Sherry,

     Defendants and Counter-Plaintiffs.

and

Geraldine Mitchell,

     Defendant.

_____/

**Opinion and Order Re: Motions for Summary Disposition**

     This matter is before the Court on the motions for summary disposition filed

by all defendants as to the plaintiff's claims and by counter-plaintiffs as to the

counter-complaint. The Court heard oral argument and took the matter under

advisement.

     The plaintiff filed this action to establish his rights in a recorded easement.

It is undisputed that at one time Wendell Klestinec owned the subject property, lots

130, 131, and the island. Klestinec attempted to create an easement along the lot

line separating lots 130 and 131 for access to the island. At the end of the

easement there is a bridge connecting the island to lots 130 and 131. Fourteen years ago, after selling the lots but not the island, Klestinec had a dispute with the lot owners over access to the island. Klestinec sued the lot owners, the same defendants to this action. The litigation concluded when the case was dismissed with prejudice for Klestinec's violation of a discovery order. Klestinec did not appeal. Later, he died.

The plaintiff bought the island from Klestinec's trust with knowledge of the prior litigation. Before plaintiff purchased the island, the judgment from the prior action was recorded in the chain of title to the island. Defendants Simon and Kimberly Sherry own lot 131 and defendant Mitchell owns lot 130.

The plaintiff alleges in this action that the defendants are blocking his use of the easement. In Count I the plaintiff requests that the Court declare his right to use the easement for access to his island. In Count II the plaintiff sues the defendants for trespass to the island. In Count III the plaintiff sues the defendants for unjust enrichment. In Count IV the plaintiff sues for slander of title, alleging that the defendant has been marketing her property, and has been claiming in her marketing materials to be the lawful owner of the island. In Count V the plaintiff seeks an easement by necessity, arguing that the island is inaccessible other than by a bridge at the end of the easement. In Count VI the plaintiff seeks an easement

2

implied by quasi-easement. With the exceptions of Counts V and VI, the complaint is substantially identical to the one filed in the previous litigation.

The Sherry defendants have filed a counter-claim. In Count I they seek to have the Klestinec Trust added as a defendant to the primary action alleging that the trust is a necessary party. In Count II the Sherrys seek to quiet title to their property with respect to plaintiff's claim of an easement. In Count III the Sherrys seek to establish the validity of their easements regarding lot 130 and the island.

**The Sherrys' Motion for Summary Disposition as to Plaintiff's Claims.** The Sherry defendants argue that this case is barred by res judicata. This Court's records reflect that in case number 1994 480949 CH, the plaintiff's successor in interest sued these same parties to establish his easement rights to access the island. In that case the defendants filed a counter-claim. That case was dismissed with prejudice for the plaintiff's failure to comply with a discovery order and a default judgment was entered against the plaintiff as counter-defendant to the counter-complaint. The dismissal with prejudice was filed in the chain of title.

Res judicata bars relitigation of claims that are based on the same transaction or events as a prior suit. *Ditmore v Michalik*, 244 Mich App 569, 577; 625 NW2d 462 (2001). Four conditions must be satisfied in order to apply res judicata. First, the prior action must have been decided on its merits. Second, the prior decision resulted in a final judgment. Third, both actions involved the same parties or their

3

privies. And fourth, the matter in the second case was or could have been resolved in the first case. *Id.* at 576.

The Court of Appeals has held repeatedly that a dismissal with prejudice for violation of a court order relating to the proceedings is a decision on the merits for res judicata purposes. *Wilson v Knight-Ridder Newspapers, Inc.,* 190 Mich App 277, 279; 475 NW2d 388 (1991), and cases cited. In deed, a voluntary dismissal with prejudice is sufficient to satisfy the requirement of a decision on the merits. *Limbach v Oakland Co Rd Comm,* 226 Mich App 389, 395; 573 NW2d 336 (1997).

It is also settled that a predecessor in interest is a privy for purposes of the application of res judicata. "A privy includes one who, after rendition of a judgment, has purchased an interest in the subject matter that the prior proceeding affected. *Husted v Auto-Owners Ins. Co.,* 213 Mich App 547, 556, 540 N.W.2d 743 (1995)." *Ditmore v Michalik,* 244 Mich App. 569, 578; 625 NW2d 462, (2001). Thus, a purchaser of property takes the property subject to whatever rights were determined in prior litigation respecting that property.

For the above reasons, the Court finds that the plaintiff's claims to have an easement declared and the claim for unjust enrichment are barred by res judicata. The easement counts that were not presented in the prior litigation could have

4

been. Claims for trespass arising after the prior litigation was dismissed would not be barred.

The Sherry defendants also argue that the claim for trespass should be dismissed because they have a valid easement to use a portion of the island. As to the rest of the island, they argue that they have acquired rights by adverse possession. The Sherry defendants have presented evidence of their easement, which the plaintiff has not contested. They have not supported their defense of adverse possession with any evidence. Neither party has submitted evidence of the nature of the alleged trespass. Summary disposition will be denied as to the trespass count.

**Defendant Mitchell's motion for Summary Disposition.** Defendant Mitchell also argues that the plaintiff's claims are barred by res judicata. For the reasons stated above, the Court agrees that the claims to establish an easement are barred by res judicata. Claims for trespass arising after the prior litigation was dismissed would not be barred by res judicata. The claim for slander of title was not presented and could not have been presented in the prior litigation. It is not barred.

Defendant Mitchell also argues that the claim for slander of title is barred by the statute of limitations. The plaintiff has stipulated to the dismissal of this count.

**Counter-Plaintiff's Motion for Summary Disposition on the Counter-
Complaint.** The counter-plaintiffs argue that the easement Klestinec purported to
create over lot 131 is invalid because at that time he owned both the island and lot
131. The argument is well founded. *Nichols v Healy*, 20 Mich App 393, 396; 174
43 (1969) and *Von Meding v Strahl*, 319 Mich 598, 605; 30 NW2d 363 (1948).
See, also, *Dimoff v Laboroff*, 296 Mich 325; 296 NW 275 (1941).

The counter-defendant argues that an easement should be declared because
in 1994 counter-plaintiff Sherry wrote a letter in which he stated that he did not
wish to sign anything granting an easement to Klestinec because of the pending
dispute between Klestinec and Sherry's neighbor. At that time Sherry stated that
he did not deny the validity of the existing easements.

The counter-defendant has not provided any law in support of his argument
that this correspondence is sufficient to create or convey an easement. More
importantly, any litigation to establish the validity of this easement is barred by the
prior litigation. The Court will grant summary disposition to the Sherry defendants
with respect to their claim to quiet title as to any claims of an easement over their
property.

WHEREFORE, IT IS HEREBY ORDERED that the Sherry defendants'
motion for summary disposition as to the plaintiffs claims is granted in part.
Counts I, III, IV, V and VI are dismissed with prejudice. Summary disposition as

to Count II for trespass is denied except as to claims that would have arisen before the prior litigation was dismissed.

IT IS FURTHER ORDERED that defendant Mitchell's motion for summary disposition is granted in part. Counts I, III, IV, V and VI are dismissed with prejudice. Summary disposition as to Count II for trespass is denied except as to claims that would have arisen before the prior litigation was dismissed.

IT IS FUTHER ORDERED that counter-plaintiff's motion for summary disposition as to the counter-complaint is granted as to Counts II and III, but not as to any claim based on adverse possession.

Dated: February 12, 2009

_____
Hon. Edward Sosnick
Circuit Court Judge

**EXHIBIT 5**

NOTE

$100,000.00                                                September 9, 2008

FOR A VALUABLE CONSIDERATION, namely the receipt of $100,000.00 in immediately available good funds in lawful money of the United States, the undersigned, James M. Horn, the undersigned's heirs, successors, representatives and assigns, jointly and severally, collectively "Borrower", promise to pay to the order of Dale B. Fuller, "Lender", at Lender's present business address, which is 18700 West Ten Mile Road, Southfield, Michigan 48075, or at such other address as Lender may from time to time direct in writing, the principal sum (the "Principal") of One Hundred Thousand and 00/100 ($100,000.00) Dollars, together with interest on the unpaid Principal balance outstanding from time to time from the date hereof, until fully paid or until September 9, 2009, whichever shall first occur, at the rate of twenty-five (25.00%) per cent per annum; provided, however, that, from and after September 9, 2009, any unpaid Principal, together with any interest accrued through September 9, 2009 and then unpaid (the "Initial Interest"), shall both bear interest (the "Secondary Interest") from and after September 9, 2009 at a variable rate, changing not more than once daily, equivalent to 7% per annum plus the so-called prime rate as published in the Wall Street Journal; provided, however, that any Secondary Interest accrued on the Initial Interest shall not accrue at a rate exceeding 10% per annum. Borrower shall pay all Secondary Interest then accrued to Lender on or before the following dates: December 9, 2009; March 9, 2010; and June 9, 2010; and shall pay all sums due on this Note, including but not necessarily limited to Secondary Interest, Initial Interest, Principal, costs, expenses and attorney fees, to Lender, without notice or demand, no later than September 9, 2010. Lender shall be under no obligation to renew or extend the said date. All payments made by Borrower to Lender shall be applied first to costs, expenses and attorney fees, then to Secondary Interest, then to Initial Interest and then to Principal.

Borrower may prepay the Secondary Interest, the Initial Interest or the Principal amount outstanding in whole or in part to Lender at any time without penalty. Any partial prepayment received shall not postpone the due date of any subsequent payment due as provided hereinabove unless the Lender shall otherwise agree in writing.

Demand, presentment for payment, notice of protest, protest, and notice of dishonor are each hereby waived by all makers, sureties, guarantors and endorsers hereof, and they do hereby waive notice of and consent to any and all extensions of this Note, the release of all or any part of any security for the payment hereof, the release of any party liable for the obligations hereunder, and all other actions permitted hereunder or any document executed in connection herewith, without the giving of notice or discharging of any liability of any of them. This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers, and shall be binding upon them and their heirs, legal representatives, successors and assigns, and shall inure to the benefit of Lender, Lender's heirs, representatives, successors and assigns.

Any notice to Borrower provided in this Note shall be given by first class mail postage prepaid addressed to Borrower's present residence address, which is 2918 Woodbine Drive, Waterford, Michigan 48328, or at such other address as Borrower may from time to time direct in writing.

If any instalment under this Note is not paid within seven (7) days of its due date, or if default should occur on a certain Mortgage described below, the entire Principal amount outstanding and accrued Initial and Secondary Interest thereon shall at once become due and payable at the option of the Note holder without further notice or demand. The Note holder may exercise this option to accelerate during any default by Borrower regardless of any prior forbearance. Acceptance by the Note holder of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due, whether before or after any acceleration, shall be and continue to be an event of default. No delay or omission on the part of the holder in exercising any right or remedy hereunder shall operate as a waiver of any such right or of any remedy hereunder. If legal action is taken to collect this Note, the Note holder shall be entitled to collect all reasonable costs and expenses thereof, including but not limited to actual, reasonable actual attorney's fees.

THIS IS THE FIRST PAGE OF A TWO-PAGE NOTE.

_____
James M. Horn

Nothing in this Note contained shall be construed or shall operate, either presently or prospectively, to require the undersigned to pay interest at a rate greater than is at any time lawful in such case to contract for, but shall require payment of interest only to the extent of such lawful rate, or to require the undersigned to make any payment or do any act contrary to law. If it should be held that the interest payable under this Note is in excess of the maximum permitted by law, the interest chargeable hereunder (whether included in the face amount or otherwise) shall be reduced to the maximum amount permitted by law, and any excess of the said maximum amount permitted by law shall be cancelled automatically and, at the option of the holder hereof, if theretofore or thereafter paid, shall be either refunded to the undersigned or credited to the principal balance of this Note and applied to the payment of the last maturing installment or installments of the indebtedness evidenced hereby (whether or not then due and payable) and not to the payment of interest.

This Note evidences a loan made by Lender to Borrower to enable Borrower to acquire full legal and equitable title in fee simple to certain real property (the "Property"), and this Note is accordingly secured by and entitled to the benefits of a certain mortgage (the "Mortgage") creating a first and prior lien on the real Property described therein as land in the Township of Waterford, Oakland County, Michigan, to-wit: T3N, R9E, SECTION 25, THAT PART OF WEST 1/2 OF SOUTHWEST 1/4 LYING SOUTHWESTERLY OF DONELSON PARK NO. 1, OAKLAND COUNTY RECORDS. PARCEL NO. 13-25-351-001. Borrower represents, warrants, acknowledges and agrees that: (a) the execution, delivery, recording and priority of the Mortgage have been material inducements to Lender to make the $100,000.00 loan to Borrower evidenced by this Note, without which Lender would not have done so; and (b) the Mortgage is Lender's bona fide primary security for the loan evidenced by this Note; and (c) the Property is vacant land upon which no single family residence or other structure is now constructed; and (d) Borrower is acquiring the Property for the business purpose of making an investment or development and not for personal use.

IN WITNESS WHEREOF, the Borrower has hereunto set Borrower's hand and seal the day and date first above mentioned.

THIS IS THE SECOND PAGE OF A TWO-PAGE NOTE.

James M. Horn

STATE OF MICHIGAN )
                  ) ss
COUNTY OF OAKLAND )

On this 9th day of September, 2008, before me appeared James M. Horn, to me personally known, who being by me sworn, did say that the foregoing instrument was signed and sealed by him, and acknowledged said instrument to be his free act and deed.

JEANINE DUGUAY
NOTARY PUBLIC - MICHIGAN
ACTING IN OAKLAND COUNTY
My Commission Expires April 22, 2015

Notary Public
Oakland County, Michigan
Acting in Oakland County, Michigan
My commission expires: _____

**EXHIBIT 6**

CERTIFIED
TRUE COPY

## MORTGAGE

THIS MORTGAGE, Made September 9, 2009, between James M. Horn, a single man, whose address is 2918 Woodbine Drive, Waterford, Michigan 48328, hereinafter referred to as the "Mortgagor"; and Dale B. Fuller, a single man, of 18700 West Ten Mile Road, Southfield, Michigan 48075; herein referred to as the "Mortgagee".

WITNESSETH, That the Mortgagor mortgages and warrants to the Mortgagee land (the "Property") situate in the Township of Waterford, Oakland County, Michigan, to-wit: T3N, R9E, SECTION 25, THAT PART OF WEST 1/2 OF SOUTHWEST 1/4 LYING SOUTHWESTERLY OF DONELSON PARK NO. 1, OAKLAND COUNTY RECORDS. PARCEL NO. 13-25-351-001, together with the hereditaments and appurtenances thereunto belonging and now or hereafter installed therein by the mortgagor or his assigns, which shall be deemed between the parties hereto, and all parties claiming by, through or under them, an accession to the freehold and a part of the realty and encumbered by this mortgage to secure the performance of the covenants hereinafter contained, and the payment of the principal sum of One Hundred Thousand and 00/100 ($100,000.00) Dollars with interest from date hereof until the full payment of all sums owing hereon according to the terms of a promissory note (the "Note") of even date executed by Mortgagor to the Mortgagee.

And the Mortgagor covenants with the Mortgagee, while this mortgage remains in force and thereafter, as follows:

1. Mortgagor is lawfully seized of the Property hereby conveyed in marketable fee simple absolute, and Mortgagor has the right to mortgage, grant, warrant, convey, release, remise, alien, bargain and sell, and assign the Property, that except as herein stated the Property is unencumbered and that the lien of this Mortgage is a first and prior lien, and that Mortgagor will warrant and defend generally the title to the Property against all claims and demands, subject only to any easements of record, and building and use restrictions of record.

2. To pay said indebtedness and the interest thereon in the time and in the manner above provided, and to pay all payments and perform all other acts required and refrain from commission of all other acts prohibited under the Note.

3. To pay all taxes and assessments levied on the land within thirty days after the same become due and payable, and deliver the official receipts therefor to the Mortgagee.

4. To abstain from the commission of waste on the mortgaged premises, and promptly comply with all laws and ordinances, regulations and requirements of the Municipality or other government regulations affecting the mortgaged premises. The Property is vacant land upon which no single family residence or other structure is now constructed.

5. That, if there be default in the payment of any tax or assessment the Mortgagee may pay such assessment or tax and any amount so paid shall be added to said indebtedness and hereby secured and be payable to the Mortgagee forthwith with interest at the rate then specified in the Note.

6. That the whole of said principal sum shall, at the option of the Mortgagee, become due and payable after default as provided in the Note.

7. That, in the event of the passage of any law or regulation, state, federal or municipal, subsequent to the date hereof in any manner changing or modifying the laws now in force governing the taxation of mortgages or debts secured by mortgages, or the manner of collecting such taxes, the entire principal secured by this mortgage and all interest accrued thereon shall become due and payable forthwith, at the option of the mortgagee.

8. That, in the event the ownership of the mortgaged premises, or any part thereof, become vested in a person other than the mortgagor, the mortgagee may deal with such successor or successors in interest with reference to this mortgage, and the debt hereby secured in the same manner as with the mortgagor, without in any manner vitiating or discharging the mortgagor's liability hereunder, or upon the debt hereby secured. On sale or transfer of all or any part of the Property, or any interest therein, Mortgagee may, at Mortgagee's option, declare all of the sums secured by this Mortgage to be immediately due and payable, and Mortgagee may invoke any remedies permitted by this Mortgage or otherwise available. This option shall not apply in case of:

(a) transfers by devise or descent or by operation of law upon death;

(b) sales or transfers when (i) the transferee's creditworthiness and management ability are satisfactory to Mortgagee, and (ii) the sale or transfer does not threaten any impairment of Mortgagee's security, and (iii) the transferee has executed, prior to the sale or transfer, a written assumption agreement containing such terms as Mortgagee may require;

(c) the grant of a leasehold interest in a part of the Property of one (1) year or less (or such longer lease terms as Mortgagee may permit by prior written approval) not containing an option to purchase;

Any transferee shall, by virtue of acceptance of a conveyance of all or any part of the Property, become jointly and severally liable with Mortgagor for all obligations of Mortgagor hereunder and under the Note, whether or not said transferee has executed any document explicitly assuming such obligations.

9. The power is hereby granted by the Mortgagor to the Mortgagee, if default is made in the payment of said indebtedness, interest or taxes, or assessments, or any part thereof or any other default occurs on this Mortgage or on the Note, at the time and in the manner herein agreed, to grant, bargain, sell, release, and convey the premises, with the appurtenances at public auction and to execute and deliver to the purchaser or purchasers, at such sale, deeds of conveyance, good and sufficient at law, pursuant to the statute in such case made and provided, and out of the proceeds to retain all sums due hereon, the costs and charges of such sale, and the attorney fees provided by law, returning the surplus money, if any, to the Mortgagor or Mortgagor's heirs and assigns, and such sale or a sale pursuant to a decree in chancery for the foreclosure hereof may, at the option of the mortgagee, be made en masse.

10. Upon the request of the Mortgagor, the Mortgagee, as its option may hereafter at any time before full payment of this mortgage, make further advances to the mortgagor and any such further advances with interest shall be secured by this mortgage and shall be evidenced by an additional note then to be given by the Mortgagor; the Mortgagor covenants and agrees to and with the Mortgagee to repay such further advances made in accordance with the note then executed; that such further advances and each note evidencing the same shall be secured by this mortgage and that all the covenants and agreements in this mortgage contained shall apply to such further advances as well as to the original principal sum herein recited.

11. This is a first mortgage. Without Lender's prior written permission, Borrower shall not allow any lien inferior to this Instrument to be perfected against the Property; any such lien attempted to be perfected without Lender's prior written permission shall be wholly void and of no effect as against Lender and shall entitle Lender to resort to any remedies provided herein or otherwise available.

12. ENVIRONMENTAL REPRESENTATIONS. Mortgagor represents, warrants and covenants that:

(a) Mortgagor has not used Hazardous Materials (as defined hereafter) on, from or affecting the Property in any manner which violates federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Materials and, to the best of Mortgagor's knowledge, no prior owner of the Property or any existing or prior tenant, sub-tenant or occupant of the Property has used Hazardous Materials on, from or affecting the Property in any manner which violates federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Materials;

(b) Mortgagor has never received any notice of any violations (and is not aware of any existing violations) of federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Materials at the Property and, to the best of Mortgagor's knowledge, there have been no actions commenced or threatened by any party for noncompliance which affects the Property;

(c) Mortgagor shall keep or cause the Property to be kept free of Hazardous Materials and, without limiting the foregoing, Mortgagor shall not cause or permit the Property to be used to generate, manufacture, refine, transport, treat, store, handle, dispose of, transfer, produce or process Hazardous Materials, except in compliance with all applicable federal, state and local laws and regulations, nor shall Mortgagor cause or permit, as a result of any intentional or unintentional act or omission on the part of Mortgagor or any tenant, sub-tenant or occupant, a release of Hazardous Materials onto the Property or onto any other property; and

(d) Mortgagor shall:

(i) cause to be conducted and completed all investigations, studies, sampling and testing, and all remedial removal and other actions necessary to clean up and remove all Hazardous Materials on, under, from or affecting the Property in accordance with all applicable federal, state and local laws, ordinances, rules, regulations and policies, to the reasonable satisfaction of Lender and in accordance with the orders and directives of all federal, state and local governmental authorities; and

(ii) defend, indemnify and hold harmless Mortgagee, his employees, agents, officers and directors (except as attributable to their grossly negligent or intentionally wrongful conduct) from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs or expenses of whatever kind or nature, including reasonable actual attorneys' fees, fees of environmental consultants and laboratory fees, known or unknown, contingent or otherwise arising out of or in any way related to:

(1) the presence, disposal, release or threatened release of any Hazardous Materials on, over, under, from or affecting the Property or the soil, water, vegetation, buildings, personal property, persons or animals thereon;

(2) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Materials;

(3) any lawsuit brought or threatened, settlement reached or governmental order relating to such Hazardous Materials; and/or

(4) any violation of laws, orders, regulations, requirements or demands of government authorities or any policies or requirements of Mortgagee, which are based upon or in any way related to such Hazardous Materials.

In the event this Instrument is foreclosed or Mortgagor tenders a deed in lieu of foreclosure, Mortgagor shall deliver the Property to Lender free of any and all Hazardous Materials so that the condition of the Property shall conform with all applicable federal, state and local laws, ordinances, rules or regulations affecting the Property. For purposes of this Instrument, "Hazardous Materials" includes, without limitation, any flammable explosives, radioactive materials, hazardous materials, hazardous wastes, hazardous or toxic substances or related materials defined in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 USC §9601, et seq.) the Hazardous Materials Transportation Act, as amended (49 USC §1801, et seq.), the Resource Conservation and Recovery Act, as amended (42 USC §6901, et seq.) and in the regulations adopted and publications promulgated pursuant thereto, or any other federal, state or local governmental law, ordinance, rule or regulation. The provisions of this paragraph shall be in addition to any and all other obligations and liabilities Mortgagor may have to Mortgagee at common law and shall survive the repayment of all sums due under the Note and any other loan documents and the satisfaction of all of the other obligations of Mortgagor hereunder and under any other loan documents, and/or the foreclosure hereof or acceptance by Mortgagee of a deed in lieu of foreclosure.

13. SUCCESSOR DEVELOPER INDEMNITY. In the event that Mortgagee acquires title to any portion of the Property by the foreclosure hereof or acceptance by Mortgagee of a deed in lieu of foreclosure, or otherwise, and thereby is deemed to be a successor developer within the meaning of any applicable legal authority, then Mortgagor shall defend, indemnify and hold harmless Mortgagee, his employees, agents, officers and directors from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs or expenses of whatever kind or nature, including reasonable actual attorneys' fees, arising out of or in any way related to the status of a successor developer, except due to affirmative actions or active negligence of Mortgagee on the Property after the date Mortgagee takes title to the Property by foreclosure or deed in lieu of foreclosure. The provisions of this paragraph shall be in addition to any and all other obligations and liabilities Mortgagor may have to Mortgagee at common law and shall survive repayment of all sums due under the Note and any other loan documents, and the satisfaction of all of the other obligations of Mortgagor hereunder and under any other loan documents, the foreclosure hereof, acceptance by Mortgagee of a deed in lieu of foreclosure, or any other acquisition of title by Mortgagee.

14. INDEMNITY AGAINST PRIOR LIENS AND ENCUMBRANCES. In the event that Mortgagee acquires title to any portion of the Property by the foreclosure hereof or acceptance by Mortgagee of a deed in lieu of foreclosure, or otherwise, then Mortgagor shall defend, indemnify and hold harmless Mortgagee, his employees, agents, officers and directors from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs or expenses of whatever kind or nature, including reasonable actual attorneys' fees, arising out of or in any way related to any liens or encumbrances having or asserting priority over the lien hereof, whether or not shown on any title insurance policy and whether or not the title insurer has agreed to insure Mortgagee against the same. The provisions of this paragraph shall be in addition to any and all other obligations and liabilities Mortgagor may have to Mortgagee at common law and shall survive repayment of all sums due under the Note and any other loan documents, and the satisfaction of all of the other obligations of Mortgagor hereunder and under any other loan documents, the foreclosure hereof, acceptance by Mortgagee of a deed in lieu of foreclosure, or any other acquisition of title by Mortgagee.

The covenants herein shall bind and the benefits and advantages inure to the respective heirs, assigns and successors of the parties.

James M. Horn

STATE OF MICHIGAN )
                                    ) ss
COUNTY OF OAKLAND )

On this 9th day of September, 2008, before me appeared James M. Horn, a single man, to me personally known, who being by me sworn, did say that the foregoing instrument was signed and sealed by him, and acknowledged said instrument to be his free act and deed.

_(signature)_ Notary Public

Oakland County, Michigan
Acting in Oakland County, Michigan
My commission expires: _____

Drafted by:
Lawrence A. Tower
30400 Telegraph Road, Suite 444
Bingham Farms, Michigan 48025

When recorded, return to:
Dale B. Fuller
18700 West Ten Mile Road
Southfield, Michigan 48075

JEANINE DUGUAY
NOTARY PUBLIC - MICHIGAN
ACTING IN OAKLAND COUNTY
My Commission Expires April 22, 2015